In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00240-CV**

_____

**THOMAS M. CLARKE AND ANA M. CLARKE, Appellants**

**V.**

**TETRA TECHNOLOGIES, INC., Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-01-00703-CV**

**MEMORANDUM OPINION**

TETRA Technologies, Inc. ("TETRA") sued Thomas M. Clarke and Ana M. Clarke for breach of contract after they personally guaranteed a promissory note for a company they owned. The Clarkes, acting pro se, answered and counterclaimed for fraud and negligent misrepresentation. The trial court granted TETRA's traditional motion for summary judgment and dismissed the Clarkes' counterclaims with prejudice. In three issues, the Clarkes complain the trial court erred by granting TETRA's Motion for Summary Judgment without allowing them the opportunity to

1

conduct discovery and denying their request to compel the production of documents and depositions. For the following reasons, we will affirm the trial court's judgment.

## Background

This case involves a March 2018 Promissory Note ("Note") and related Guaranty of Payment and Performance ("Guaranty"). Under the Note's terms, non-party Epic Companies, LLC, formerly known as Epic Offshore Specialty, LLC, ("Epic") promised to pay TETRA $7,500,000 plus interest, with principal and interest due and payable in full on December 31, 2019. The Clarkes and TETRA entered into the related Guaranty, signed the same day as the Note. The Note and Guaranty were executed in conjunction with an Equity Interest Purchase Agreement ("EIPA") between Epic and TETRA. The Clarkes signed the Guaranty, which stated that each Guarantor's liability was "joint and several." In the Guaranty, the Clarkes agreed to pay Epic's obligations under the Note if Epic defaulted and any related expenses incurred by TETRA in enforcing its rights under the Note. The Guaranty included the following provision disclaiming reliance:

> 3.06 Condition of Epic. Each Guarantor warrants and represents that such Guarantor is fully aware of the financial condition of Epic and is executing and delivering this Guaranty based solely upon such Guarantor's own independent investigation of all matters pertinent hereto, and that such Guarantor is not relying in any manner upon any representation or statement of TETRA. Each Guarantor warrants, represents and agrees that such Guarantor is in a position to obtain, and such Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Epic and any other matter pertinent hereto, and that such Guarantor is not relying

2

upon TETRA to furnish, and shall have no right to require TETRA to obtain or disclose, any information with respect to the Obligations guaranteed hereby, the financial condition or character of Epic or the ability of Epic to pay the indebtedness or perform the Obligations guaranteed hereby, the existence of any collateral or security for any or all of such Obligations, the existence or nonexistence of any other guaranties of all or any part of such Obligations, any actions or non-action on the part of TETRA, Epic or any other person or entity, or any other matter, fact or occurrence whatsoever. By executing this Guaranty, each Guarantor acknowledges and knowingly accepts the full range of risks encompassed within a contract of guaranty.

TETRA pleaded that Epic defaulted under the Note, failed to pay any amounts due on the maturity date, and the Clarkes were required to fulfill their obligations under the Guaranty to pay TETRA. TETRA further alleged the Clarkes failed to perform under the Guaranty, and as a result, TETRA sued for damages related to the Clarkes' breach of contract.

In January 2020, TETRA filed suit and in February 2020, the trial court entered a Docket Control Order ("DCO"), which set the discovery deadline as July 21, 2020. The DCO specified that "[b]y no later than this date, all written discovery responses must be due, all responses and supplements must be completed, and all depositions must be completed, read, and signed." The record reflects that on July 9, 2020, the Clarkes sent their first discovery requests, which included Request for Disclosure and Requests for Production to TETRA. The record also shows that the Clarkes noticed multiple depositions of high-ranking TETRA officials on July 22, 2020, and the trial court granted TETRA's Motion to Quash those depositions. While

3

the record indicates the Clarkes responded to TETRA's Motion to Quash with a letter to the trial court, it does not show that they ever moved to compel discovery responses or depositions.

After the close of discovery, TETRA moved for traditional summary judgment on its breach of contract claim and on the Clarkes' counterclaims for fraud and negligent misrepresentation. *See* Tex. R. Civ. P. 166a(c). Its summary judgment evidence included: (1) Affidavit of Elijio V. Serrano, a Senior Vice President and Chief Financial Officer of TETRA; (2) Note executed by Epic; (3) Guaranty executed by the Clarkes; (4) February 28, 2018 EIPA; (5) Verified Answer of Ana; (6) Verified Answer of Thomas; and (7) Excerpts of Thomas's Deposition. Notably, Thomas testified in his deposition to the terms of the Note and Guaranty, that Epic had not paid the Note, the Clarkes were required to pay in the event of Epic's default, and the Clarkes had not made any payments since Epic defaulted. Additionally, Thomas testified that he was represented by counsel during the transaction, described the negotiations, and identified people who helped them perform due diligence investigations. Thomas also described his business holdings and dealings such that one could conclude he was a sophisticated party. Likewise, Serrano's affidavit outlined the terms of the agreements, authenticated the copies of the Note, Guaranty, and EIPA, averred that Epic defaulted and the Clarkes failed to pay as

required by the Guaranty, and outlined the amounts owed based on the terms of the Guaranty.

The trial court considered the Motion for Summary Judgment by submission, granted the Motion, awarded TETRA actual damages of $7,887,453.59 against the Clarkes, jointly and severally, plus post-judgment interest, and dismissed the Clarkes' counterclaims for fraud and negligent misrepresentation with prejudice.

**Standards of Review**

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *See id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d

5

289, 293 (Tex. 2020); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). With a traditional motion for summary judgment, the nonmovant has no burden to respond "'unless and until'" the movant conclusively establishes its cause of action or defense as a matter of law. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citation omitted); *see also* Tex. R. Civ. P. 166a(c). "If the movant carries this burden, the burden shifts to the nonmovants to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citation omitted).

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). We must determine whether the trial court's discretion was so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial court acted without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) (citation omitted). Likewise, we review a trial court's decision on a motion to compel discovery for an abuse of discretion. *See Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 373 (Tex. App.—Beaumont 2009, pet. denied).

**Analysis**

In their first issue, the Clarkes contend they were denied the right to conduct discovery. The record does not support this, rather the record establishes the trial court entered a DCO which provided the discovery deadlines. TETRA filed suit in January of 2020, the trial court entered the DCO in February 2020, and discovery closed on July 21, 2020, three months before the scheduled trial date. The Clarkes had over five months to conduct discovery; however, the record reveals they did not propound any discovery until July 9, 2020, making TETRA's responses due after the discovery period closed in violation of the DCO. When a party fails to diligently use the rules of civil procedure for discovery purposes, it is not entitled to a continuance. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988); *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 223 (Tex. App.—Fort Worth 2013, no pet.). In their brief, the Clarkes acknowledge this discovery deadline and that they "had not requested an extension of the discovery deadline[.]" While the Clarkes argue that the trial court has the authority to modify the discovery plan when "justice so requires" under Texas Rule of Civil Procedure 190.5, the Clarkes failed to ask the trial court to modify the DCO or extend the discovery deadlines. *See* Tex. R. Civ. P. 190.5. We overrule this issue.

In their second issue, the Clarkes contend the trial court erred in denying their request to compel TETRA to respond to requests for production and to present

7

certain high-ranking corporate witnesses for deposition. The record in this case does not show that the Clarkes ever filed a motion to compel these discovery responses or depositions. *See, e.g., Marchand*, 83 S.W.3d at 800–801 (concluding no abuse of discretion in denying motion to continue where appellee had ample time to conduct and did conduct discovery but failed to file a motion to compel discovery); *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 433–34 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom., Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016) (concluding no abuse where appellee filed motion to compel but did not file motion for continuance with required affidavits). In response to TETRA's motion to quash the corporate representatives' depositions, the Clarkes complained that without responses to their discovery requests or depositions they could not adequately represent themselves. The Clarkes' letter to the trial court explains why they were late responding to TETRA's discovery requests and blamed the COVID-19 pandemic for hampering their ability to locate responsive documents. Thomas sent a second letter to the trial court requesting a hearing on TETRA's Motion to Quash, which primarily complains of TETRA's "false, irrelevant, and defamatory statements" against them. However, neither letter explains why they failed to send discovery requests less than thirty days before the discovery period closed or why they unilaterally noticed depositions of TETRA's corporate representatives after the

8

discovery period closed. Likewise, the letters fail to request that the discovery period be extended. We overrule this issue.

In their third issue, the Clarkes assert the trial court erred by granting TETRA's summary judgment motion without allowing them to conduct any discovery and verify facts relevant to the trial court's decision. Generally, "[a] party seeking more time to oppose a summary judgment must file an affidavit describing the evidence sought, explaining its materiality, and showing the due diligence used to obtain the evidence." *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also* Tex. R. Civ. P. 166a(g), 251, 252. "The affidavit must show why the continuance is necessary; conclusory allegations are not sufficient." *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–22 (Tex. 1995) (holding further time for discovery unnecessary as construction of unambiguous contract required no discovery). If a movant fails to comply with Rule 251, which requires that a motion for continuance be supported by affidavit, we will presume that the trial court did not abuse its discretion by denying a motion to continue. *See* Tex. R. Civ. P. 251; *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

The record does not reflect that the Clarkes moved for a continuance of the summary judgment or asserted they needed more time for discovery. The only affidavit included was filed with their summary judgment response, and that

9

affidavit failed to address the need for additional discovery. Even if the Clarkes had complied with the rules for filing a motion for continuance supported by an affidavit, where an unambiguous contract is involved, additional discovery is not warranted. *See CBI Indus., Inc.*, 907 S.W.2d at 522. The Clarkes have not referred us to any portion of the record indicating that they presented a motion for continuance to the trial court and obtained a ruling denying their motion. *See Risner v. McDonald's Corp.*, 18 S.W.3d 903, 909 (Tex. App.—Beaumont 2000, pet. denied) (noting same). "A court is not required to consider a motion that is not called to its attention." *Id.* (quoting *Greenstein, Logan & Co. v. Burgess Mktg.*, 744 S.W.2d 170, 179 (Tex. App.—Waco 1987, writ denied)). We overrule this issue.

TETRA conclusively established by way of its traditional summary judgment motion and supporting evidence that a valid contract existed wherein the Clarkes personally guaranteed the Note if Epic defaulted as well as the Clarkes' disclaimers of reliance on TETRA's representations. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citations omitted) (outlining breach of contract elements). To enforce the Guaranty contract, TETRA must show: (1) the existence and ownership of the Guaranty; (2) the terms of the underlying Note; (3) the occurrence of the conditions upon which liability is based; and (4) the Clarkes' failure or refusal to perform their promise. *See Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205–06 (Tex. App.—Houston [14th Dist.] 2012, no

pet.). Thomas's deposition testimony confirmed this as did the copies of the Guaranty and Note included with the summary judgment evidence. The affidavit of Serrano, TETRA's Vice President and CFO, established that TETRA owned the Note. *See id.* The copy of the Note established its terms, and the copy of the Guaranty established the occurrence of the conditions on which liability is based, i.e., that Epic defaulted on the Note, which triggered the Clarkes' payment obligation. *See id.* Finally, Serrano's affidavit and Thomas's deposition testimony established that the Clarkes failed to pay as required by the Guaranty. *See id.*

Since TETRA conclusively established its right to judgment as a matter of law on the breach of contract claim under the Guaranty and negated the reliance element of the Clarkes' claims for fraud and negligent misrepresentation, the burden shifted to the Clarkes to provide evidence creating a fact issue. *See* Tex. R. Civ. P. 166a(c); *Energen Res. Corp.*, 642 S.W.3d at 514 (explaining when burden shifts to nonmovant). The Clarkes' counterclaims for fraud and negligent misrepresentation required that they establish the element of justifiable reliance. *See JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (listing elements of fraud, including justifiable reliance); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (listing elements of negligent misrepresentation claim, including justifiable reliance). "When 'sophisticated parties represented by counsel disclaim reliance on representations about a specific

matter in dispute, such a disclaimer may be binding, conclusively negating the element of reliance[.]'" *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011)). The Guaranty contained language wherein the Clarkes disclaimed reliance, specifically that each "is executing and delivering this Guaranty based solely upon such Guarantor's own independent investigation of all matters pertinent hereto, and that such Guarantor is not relying in any manner upon any representation or statement of TETRA." Further, Thomas's deposition testimony established a level of sophistication in business matters, that they were represented by counsel during the negotiations, the negotiations took several months, and it was an arms-length transaction. *See id.*; *Italian Cowboy Partners*, 341 S.W.3d at 332.

The only evidence the Clarkes submitted in support of their summary judgment response was Thomas's affidavit. That affidavit focuses on oral representations or what Thomas was "told." However, such evidence fails to create a fact issue in the face of express contractual disclaimers denying reliance on such representations where, as here, the complaining party was represented by counsel, it was a negotiated arms-length transaction, the parties were sophisticated, and the disclaimer of reliance language was clear. *See Lufkin Indus., LLC*, 573 S.W.3d at 229 (noting factors courts should consider when enforcing whether a disclaimer of

reliance is binding). Because no genuine issue of material fact existed, the trial court properly granted TETRA's Motion for Summary Judgment. *See* Tex. R. Civ. P. 166a(c).

## Conclusion

Having overruled the Clarkes' issues and determined no genuine issues of material fact remain, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 12, 2021
Opinion Delivered July 28, 2022

Before Golemon, C.J., Horton and Johnson, JJ.