

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-094-CV

TEXAS ETHICS COMMISSION          APPELLANT

V.

TOBY GOODMAN          APPELLEE

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

The sole issue we address in this summary judgment appeal is whether

Appellee Toby Goodman conclusively established that he reasonably relied upon

---

[1] *See* Tex. R. App. P. 47.4 (providing that "an opinion must be a memorandum opinion unless it does any of the following" and listing four circumstances, none of which are applicable here in light of changes to the election code).

Advisory Opinion No. 319[2] in defense of his prosecution by the Texas Ethics

Commission (TEC).  Because, for the reasons set forth below and based on the

summary judgment record before us, we answer this issue in the affirmative,

we will affirm the trial court's summary judgment.

## II.  ADVISORY OPINION  319

In April 1996, the TEC issued Advisory Opinion 319.  That opinion, in its

entirety, is set forth below.

### ETHICS ADVISORY OPINION NO. 319

*April 19, 1996*

> *Whether a legislator may use political contributions to pay rent and maintenance fees for a condominium in Travis County that the legislator's wife owns as separate property.  (AOR-350)*

The Texas Ethics Commission has been asked whether a legislator may use political contributions to pay rent and maintenance fees for a condominium in Travis County that the legislator's wife owns as separate property.  There are two issues presented by that question: whether such payments constitute a conversion of political contributions to personal use in violation of section 253.035 of the Election Code and whether such payments constitute a use of political contributions to purchase real estate in violation of section 253.038 of the Election Code.

Although a legislator may not convert political contributions to personal use, a legislator who does not ordinarily reside in Travis

---

[2] Hereinafter referred to as Advisory Opinion 319.

2

County may use political contributions to pay "reasonable housing or household expenses incurred in maintaining a residence in Travis County." Elec. Code § 253.035(a), (d)(1). Such payments are reportable officeholder expenditures. *See id.* §§ 251.001(9), 254.031(3), (6). The question here is whether such payments are permissible even if made to a legislator's spouse.

The Ethics Commission has stated that a candidate or officeholder may use political contributions to reimburse himself for the use of personal assets for campaign or officeholder purposes. Ethics Advisory Opinions Nos. 129, 116 (1993). Similarly, it is permissible for a candidate or officeholder to use political contributions to pay a family member for the use of the family member's assets for campaign or officeholder purposes. Any such reimbursement should be based on the fair market value of the use of an asset. A conversion of political contributions to personal use would occur if a legislator paid his spouse more than fair market value for the use of her real property for officeholder purposes.

Although the personal-use restriction in section 253.035 of the Election Code does not prohibit a legislator from using political contributions to pay his spouse fair market value for the use of the spouse's assets for officeholder purposes, it has been suggested that the payments at issue here are prohibited under section 253.038 of the Election Code, which prohibits the use of political contributions to purchase real property or to pay the interest on or principal of a note for the purchase of real estate. [FN 1]

The real property in question here is the separate property of the legislator's spouse. In Texas a married person has the sole management, disposition, and control over his or her separate property. Tex. Const. art. XVI, § 15; Fam. Code § 5.21. A man who pays rent to his spouse for the use of real property does not thereby acquire or "purchase" an interest in that property. Consequently, a legislator's use of political contributions to make a rental payment to his spouse for the use of her separate rental property does not constitute a payment to purchase real property and does not violate section 253.038 of the Election Code.

3

SUMMARY

A legislator's use of political contributions to make a rental payment to his spouse for the use of her separate property does not constitute a payment to purchase real property and does not violate section 253.038 of the Election Code. Nor is such a payment a conversion to personal use as long as the payment does not exceed the fair market value of the use of the property.

---

[FN1]The prohibition on the use of political contributions to purchase real property or to make payments on a note for the purchase of real property does not apply to a payment made in connection with real property purchased before January 1, 1992. In the absence of an agreement to the contrary, income from separate property is community property. Tex. Const. art. XVI, § 15. Although in this case the legislator may have a community interest in the rent payments, the legislator does not acquire an interest in the real property by virtue of those payments.

Op. Tex. Ethics Comm'n No. 319 (1996) (emphasis added).[3]

---

[3][...] In 2007, the legislature in effect overruled Advisory Opinion 319 by amending section 253.038 of the election code to expressly prohibit an officeholder from using a political contribution to pay rent to a business related to the officeholder or "a person related within the second degree by consanguinity or affinity . . . to the . . . officeholder." *See* Tex. Elec. Code Ann. § 253.038(a-1)(1) (Vernon Supp. 2009). We are required, however, to apply the law as it existed at the time of Goodman's alleged violation. *See* Act of May 27, 2007, 80th Leg., R.S., ch 1087, § 3, 2007 Tex. Gen. Laws 3712, 3712–13 (providing that "[a] payment made from political contributions before September 1, 2007, is governed by the law in effect on the date the payment was made, and the former law is continued in effect for that purpose").

4

## III. FACTUAL BACKGROUND

Goodman was elected to the Texas House of Representatives in 1990 and served in that capacity until January 2007. During Goodman's service as a legislator, he claimed Tarrant County as his primary residence.

In 1999, Goodman and his wife purchased a condominium in Travis County. Both Goodman and his wife signed a note on the property. The day after purchasing the condominium, Goodman conveyed all of his interest in the condominium to his wife by executing a special warranty deed and made the condominium her separate property via a partition agreement.

Goodman rented the condominium from his wife and utilized it when he was in Austin working as a State Representative. He paid rent to his wife from his political contributions. In 2003, Goodman's wife sold the condominium.

In 2004, Goodman and his wife purchased a house in Cedar Park, in Williamson County, the county just north of Travis County. Again, Goodman transferred his interest in the house to his wife by a special warranty deed and made the house her separate property via a partition agreement. Again, Goodman rented the house from his wife and utilized it when he was in Austin working as a State Representative.

In August 2006, a citizen filed a complaint against Goodman with the TEC, alleging that Goodman had violated section 253.035 and the then-

applicable version of section 253.038 of the election code by making payments from political contributions to purchase real property or to pay interest or principle on a note for the purchase of real property.

Ultimately, the TEC entered a final order determining that Goodman had violated section 253.035 and the then-applicable version of section 253.038 of the election code and imposed a $10,000 civil penalty against Goodman. Pursuant to section 571.133 of the government code, Goodman perfected an appeal of the TEC's final decision by filing suit in a Tarrant County district court for a trial de novo.

In due course, Goodman moved for summary judgment in the trial court. Goodman asserted that his summary judgment evidence conclusively established his affirmative defense of reasonable reliance on Advisory Opinion 319. Goodman attached various items of summary judgment evidence to his motion, including his own affidavit. In his affidavit, Goodman disclosed that after learning of Advisory Opinion 319, he had contacted the TEC and discussed that opinion with a staff member; according to Goodman, he forwarded drafts of the special warranty deed and partition agreement relating to the condominium to the TEC to obtain its input concerning the documents.

The TEC filed a response to Goodman's motion for summary judgment. The only controverting summary judgment evidence attached to the TEC's

response was a short, one-page affidavit of a TEC staff attorney who swore that he had "found no document or correspondence to, from, or concerning Mr. Goodman that indicates that Mr. Goodman contacted Texas Ethics Commission staff or a member of the Texas Ethics Commission in 1999 to discus Advisory Opinion 319, a Partition Agreement, or a Special Warranty Deed."

The trial court granted Goodman's motion for summary judgment. The TEC perfected this appeal. In a single issue, the TEC asserts that summary judgment was improper because a genuine issue of material fact exists on whether Goodman reasonably relied upon Advisory Opinion 319.

## IV. SUMMARY JUDGMENT STANDARD OF REVIEW

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars*

7

*Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003).

## V.  Summary Judgment on Goodman's Reasonable Reliance Affirmative Defense

A.    Statutory Construction of the Reasonable Reliance Defense

The purpose of a TEC advisory opinion is not to make specified conduct illegal; the effect of a TEC advisory opinion is to provide those who reasonably rely on the opinion a defense in an action to impose a civil remedy. *See* Op. Tex. Ethics Comm'n No. 147 (1993).  In connection with prosecutions by the TEC, the government code provides:

> It is a defense to prosecution or to imposition of a civil penalty that the person reasonably relied on a written advisory opinion of the commission relating to the provision of the law the person is alleged to have violated or relating to a fact situation that is substantially similar to the fact situation in which the person is involved.

Tex. Gov't Code Ann. § 571.097 (Vernon 2004).  Goodman moved for summary judgment, alleging that he had conclusively established the defense of his reasonable reliance on Advisory Opinion 319.  We engage in a statutory construction of government code section 571.097 to determine the elements of the reasonable reliance defense.

The meaning of a statute is a legal question, which we review de novo to ascertain and give effect to the legislature's intent. *Entergy Gulf States, Inc.*

8

*v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *F.F.P. Operating Partners., L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Where the text is clear, the text is determinative of that intent. *Entergy*, 282 S.W.3d at 437 (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.")). This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. *Id.* Therefore, our practice when construing a statute is to recognize that the words the legislature chooses should be the surest guide to legislative intent. *Id.* (construing in summary judgment context the statutory exclusive remedy defense set forth in the labor code); *see also* Tex. Gov't Code Ann. § 311.002(1) (Vernon 2005) (stating that the Code Construction Act applies to . . . "each code enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program"); Act of April 30, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 623 (recodifying defense for reliance on advisory opinion from Tex. Rev. Civ. Stats. Ann. art. 6252-9d.1, § 1.30(a)) (current version at Tex. Gov't Code Ann. § 571.097 (Vernon 2004)).

With these principles in mind, we examine the words of section 571.097's reasonable reliance defense. By the plain meaning of the words the legislature chose to utilize in section 571.097, the legislature created a defense

to prosecution or to imposition of a civil penalty when a person reasonably relies on a written advisory opinion of the TEC. *See* Tex. Gov't Code Ann. § 571.097. The plain terms of the statute indicate that reliance is reasonable when (1) the written opinion relates to the provision of the law the person is alleged to have violated, (2) the written opinion relates a fact situation substantially similar to the fact situation in which the person is involved, or (3) both. *See Entergy*, 282 S.W.3d at 437–38 (construing language of statutory defense in summary judgment context).

This construction of the plain language of section 571.097 is consistent with the stated purpose of an advisory opinion, which is to provide a defense to those who reasonably rely on the opinion. *See* Op. Tex. Ethics Comm'n No. 147. Enforcing this construction of the plain language of section 571.097 does not produce absurd results; to the contrary, the logical result of the statute is that reliance on a written opinion of the TEC is reasonable when the written opinion relates to the same provision of the law allegedly violated, when the facts of the written opinion are substantially similar to the facts at issue, or both. *See* Tex. Gov't Code Ann. § 571.097.

The TEC urges us to construe section 571.097's "reasonable reliance" requirement as equivalent to the reasonable reliance a plaintiff must prove to establish promissory estoppel, equitable estoppel, a defendant's apparent

authority, or that a defendant must prove to establish a mistake of law defense in a criminal case. *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 865 (5th Cir. 1999) (promissory estoppel); *McCormick Mktg., Inc. v. City of Colorado City*, 42 S.W.3d 162, 164–65 (Tex. App.—Eastland 2001, no pet.) (equitable estoppel); *Mobil Oil Corp. v. Frederick*, 615 S.W.2d 323, 325 (Tex. Civ. App.—Fort Worth 1981), *aff'd in part, rev'd in part on other grounds*, 621 S.W.2d 595 (Tex. 1981) (defendant's apparent authority); *Harrison v. State*, No. 02-07-00007-CR, 2007 WL 4292425, *5–6 (Tex. App.—Fort Worth Dec. 6, 2007, pet. ref'd) (not designated for publication) (mistake of law in defense in criminal case). Contrary to these common law notions of reasonable reliance and to the penal code provision dealing with the mistake of law defense, government code section 571.097 expressly sets out when reliance on a TEC opinion is reasonable, and that is when the TEC's written opinion relates to the provision of the law the person is alleged to have violated, the written opinion relates a fact situation substantially similar to the fact situation in which the person is involved, or both. Tex. Gov't Code Ann. § 571.097.

We next examine the summary judgment evidence to determine whether Goodman conclusively established these elements of his reasonable reliance affirmative defense.

11

B.    The Summary Judgment Evidence Before the Trial Court

In a trial de novo from a TEC final order, "[t]he reviewing trial court shall try all issues of fact and law in the manner applicable to other civil suits" and "may not admit in evidence the fact of prior action by the [TEC] or the nature of that action." *See* Tex. Gov't Code Ann. § 571.133(d) (Vernon Supp. 2009). Although Goodman filed his suit on April 10, 2008, the parties did not engage in written discovery, and no depositions were taken.  Thus, no such evidence was available for use as summary judgment evidence.

Goodman attached seventeen exhibits to his December 11, 2008 motion for summary judgment, including his own affidavit, a certified copy of Advisory Opinion 319, and various documents concerning the purchase of the properties at issue, the transfer of the properties to his wife, and the partition agreements.[4] As previously mentioned, the TEC filed as controverting summary

---

[4] ... Thus, the summary judgment evidence before the trial court consisted of the following filed by Goodman:

Exhibit A: Affidavit of Toby Goodman and Attached Exhibits:
   A-1.  A certified copy of Texas Ethics Commission Ethics Advisory Opinion 319.
   A-2.  Special Warranty Deed dated February 19, 1999.
   A-3.  Partition Agreement dated February 22, 1999.
   A-4.  Travis County Tax and Appraisal Statements.
   A-5.  Special Warranty Deed dated October 23, 2003, and made effective October 31, 2003.
   A-6.  General Warranty Deed dated March 26, 2004.

12

judgment evidence only a short, one-page affidavit of a TEC staff attorney who swore that he had "found no document or correspondence to, from, or concerning Mr. Goodman that indicates that Mr. Goodman contacted Texas Ethics Commission staff or a member of the Texas Ethics Commission in 1999 to discuss Advisory Opinion 319, a Partition Agreement, or a Special Warranty Deed."   On appeal, both parties agree that Goodman's purported verbal communications with the TEC are not relevant because section 571.097's reasonable reliance defense is predicated on reasonable reliance on a *written* advisory opinion issued by the TEC.  Thus, because the TEC's only summary judgment evidence simply controverts the existence of any *verbal* communications between Goodman and the TEC—and this evidence is not relevant to any reliance by Goodman on written Advisory Opinion 319—the TEC filed no relevant controverting summary judgment evidence.[5]

---

A-7.  Promissory Note dated March 26, 2004.
A-8.  Deed of Trust dated March 26, 2004
A-9.  Special Warranty Deed dated March 27, 2004.
A-10.  Partition Agreement dated March 27, 2004.
A-11.  Williamson County Tax and Appraisal Statements.
Exhibit B:  Affidavit of Robert Martin, Ph.D.
Exhibit C:  Texas Ethics Commission Rules, Ch.12-A § 12.5.
Exhibit D:  Sworn Complaint Before Texas Ethics Commission.
Exhibit E:  Texas Ethics Commission Final Order.
Exhibit F:  Texas Ethics Commission Letter dated March 11, 2008.

[5] ... The TEC attempts to rely on some of the factual statements set forth in its final order; Goodman attached that order to his summary judgment motion

C.     Goodman's Uncontroverted Summary Judgment Evidence Conclusively Establishes the Reasonable Reliance Affirmative Defense

1.     TEC's allegations against Goodman

The TEC alleged that Goodman violated election code section 253.035 and the then-applicable version of section 253.038.  Section 253.035 prohibits a person who accepts a political contribution as an officeholder from converting the contribution to personal use. Tex. Elec. Code Ann. § 253.035(a) (Vernon 2003).  "Personal use" is defined as "a use that primarily furthers individual or family purposes not connected with the performance of duties or activities as a . . . holder of a public office." *Id*. § 253.035(d).  But, "personal use" is expressly defined not to include

> payments made to defray ordinary and necessary expenses incurred in connection with activities as a candidate or in connection with the performance of duties or activities as a public officeholder, including payment of rent, utility, and other reasonable housing or household expenses incurred in maintaining a residence in Travis County by members of the legislature who do not ordinarily reside in Travis County, but excluding payments prohibited under Section 253.038.

---

as summary judgment evidence.  By law, however, the factual statements in the final order are no evidence in Goodman's trial court suit.  *See* Tex. Gov't Code Ann. § 571.133(d) (providing that in a trial de novo from a TEC final order, the trial court "*shall try all issues of fact* and law *in the manner applicable to other civil suits*" and "*may not admit in evidence the fact of prior action by the [TEC] or the nature of that action*" except to establish trial court jurisdiction over the suit) (emphasis added).

*Id.* At the time, election code section 253.038 prohibited an officeholder from knowingly making or authorizing payment from a political contribution to purchase real property or to pay the interest on or principal of a note for the purchase of real property. *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 304, § 5.07, 1991 Tex. Gen. Laws 1290, 1325 (amended 2007).

    2.    Summary Judgment Evidence on Elements of Reasonable Reliance Defense

As set forth above, the reasonable reliance defense created by the legislature requires that a person reasonably rely upon a written advisory opinion of the TEC and explains that reliance is reasonable when the opinion relates to the provision of the law that the person is alleged to have violated, the opinion relates a fact situation substantially similar to the fact situation in which the person is involved, or both. *See* Tex. Gov't Code Ann. § 571.097.

    a.    Reliance

Concerning the first element, Goodman's affidavit affirmatively swears that he relied on Advisory Opinion 319 in executing the special warranty deed conveying his interest in the Travis County condominium at issue to his wife, in executing the partition agreement making the condominium her separate property, in executing the special warranty deed conveying his interest in the Cedar Park home to his wife, and in executing the partition agreement making

15

the Cedar Park home her separate property. Goodman's affidavit further provides that "[f]rom 1999 until September 2005, and in reliance on the Opinion, I made rental payments to my wife in various amounts from funds on deposit in the officeholder/campaign account to pay rent, maintenance fees, household expenses, and housing costs as I do not ordinarily reside in Travis County, Texas."

Goodman's testimony that he relied upon Advisory Opinion 319 is uncontradicted, clear, direct and positive, and free from inaccuracies and circumstances tending to cast suspicion on it. *See, e.g.*, *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). Indeed, the TEC does not dispute that Goodman relied upon Advisory Opinion 319; rather, the TEC contends that "in this case there are genuine issues of fact as to whether Goodman's reliance on EAO 319 was reasonable." Based on the summary judgment evidence in the record, Goodman conclusively established that he relied upon Advisory Opinion 319. We next examine the reasonableness of Goodman's reliance.

b.     Reasonableness of Reliance[6]

Concerning the second element of the affirmative defense, the reasonableness of reliance, Goodman's summary judgment evidence conclusively established—via the certified copy of Advisory Opinion 319 attached to his summary judgment motion—that Advisory Opinion 319 relates specifically to election code section 253.035(a) and to former section 253.038(a), the same provisions of the law that Goodman was alleged to have violated.[7] *See* Tex. Gov't Code Ann. § 571.097; Tex. Elec. Code Ann. § 253.035(a); Act of May 27, 1991, 72nd Leg., R.S., ch. 304, § 5.07, 1991 Tex. Gen. Laws 1290, 1325 (amended 2007) (current version at Tex. Elec. Code Ann. §253.038(a-1)(1)).

We next examine whether Goodman's summary judgment evidence conclusively established that his reliance was reasonable because Advisory

---

[6] ... As previously mentioned, the TEC cites a number of "reasonable reliance" cases from other areas of the law.  We decline to apply those cases' reasonable reliance analysis here because, as set forth above, government code section 571.097 itself dictates when reliance on a written TEC advisory opinion is reasonable.  *See* Tex. Gov't Code Ann. § 571.097.

[7] ... Advisory Opinion 319 states, "There are two issues . . . :  whether such payments constitute a conversion of political contributions to personal use in violation of section 253.035 of the Election Code and whether such payments constitute a use of political contributions to purchase real estate in violation of section 253.038 of the Election Code," which are the exact provisions of the election code that the TEC alleged Goodman had violated.

17

Opinion 319 relates "to a fact situation that is substantially similar to the fact situation in which the person [Goodman] is involved." *See* Tex. Gov't Code Ann. § 571.097. This brings us to the heart of the TEC's argument in this appeal. The TEC argues that Goodman's reliance on Advisory Opinion 319 was not reasonable because Advisory Opinion 319 does not relate to a fact situation that is similar to Goodman's. The TEC points out two factual differences between the situation addressed in Advisory Opinion 319 and Goodman's situation. First, the TEC points out that Goodman signed a note on the Travis County condominium and, subsequently, on the Cedar Park home and that this fact distinguishes Goodman's situation from the situation presented in Advisory Opinion 319. Second, the TEC claims that Advisory Opinion 319 addressed a legislator's rental of his spouse's separate property located in Travis County and the fact that the Cedar Park home rented by Goodman was across the Travis County line distinguishes Goodman's situation from the situation presented in Advisory Opinion 319.

We first note that the reasonable reliance defense promulgated by the legislature does not authorize an officeholder or candidate to rely on advisory opinions only when the opinion presents facts identical to those in which the person being prosecuted by the TEC is involved. Rather, the legislature chose to create a defense when the TEC advisory opinion relates "to a fact situation

18

*that is substantially similar* to the fact situation in which the person is involved." *See* Tex. Gov't Code Ann. § 571.097 (emphasis added). We examine Advisory Opinion 319 to determine whether Goodman's summary judgment evidence establishing that he signed a note on the Travis County condominium and the Cedar Park house make his situation not substantially similar to the situation in that opinion.

The TEC argues that because Goodman remained liable on the notes he signed on the Travis County condominium and the Cedar Park home, he "retained a financial interest in the properties because each payment that he made to his wife as 'rent' ultimately benefitted him and his liability on the promissory notes. Accordingly, because Goodman remained liable for the debt, the use of political contributions as rent directly benefitted him." The problem with the TEC's argument is that the TEC submitted no controverting summary judgment evidence in the trial court. No summary judgment evidence exists in the record establishing how Goodman's wife used the rent payments he made to her for rental of her separate property. The summary judgment evidence conclusively establishes that Goodman used political contributions to pay rent to his wife for the rental of her separate property, not that he used political contributions to make payments on a note.

19

More importantly, nothing in Advisory Opinion 319 indicates that the rent paid by the legislator to rent his wife's separate property was not used by the wife to discharge a joint obligation of the couple for the purchase of the rental property or other real property, such as the couple's home. Instead, Advisory Opinion 319 explains and concludes:

> [T]he personal-use restriction in section 253.035 of the Election Code does not prohibit a legislator from using political contributions to pay his spouse fair market value for the use of the spouse's assets for officeholder purposes, it has been suggested that the payments at issue here are prohibited under section 253.038 of the Election Code, which prohibits the use of political contributions to *purchase* real property or to pay the interest on or principal of a note for the *purchase* of real estate. [Footnote omitted.]

> The real property in question here is the separate property of the legislator's spouse. In Texas a married person has the sole management, disposition, and control over his or her separate property. Tex. Const. art. XVI, § 15; Fam. Code § 5.21. A man who pays rent to his spouse for the use of real property does not thereby acquire or "purchase" an interest in that property. Consequently, a legislator's use of political contributions to make a rental payment to his spouse for the use of her separate rental property does not constitute a payment to purchase real property and does not violate section 253.038 of the Election Code.

Op. Tex. Ethics Comm'n No. 319 (emphasis added). And finally, Advisory Opinion 319 summarizes its holding that a legislator's use of political contributions to make a rental payment to his spouse for the use of her separate property "does not constitute a payment to purchase real property and does not violate section 253.038 of the Election Code. Nor is such a payment

20

a conversion to personal use as long as the payment does not exceed the fair market value of the use of the property." We cannot agree with the TEC that the fact situation presented by Advisory Opinion 319 is not substantially similar to the fact situation in which Goodman is involved. To the contrary, the summary judgment evidence submitted by Goodman conclusively establishes that his situation is substantially similar to the situation presented and addressed in Advisory Opinion 319.

Next, the TEC argues that Advisory Opinion 319 is not substantially similar to Goodman's situation because the rental property at issue in that opinion was located in Travis County while Goodman's Cedar Park home is located just across the Travis County line in Williamson County. The TEC did not raise this issue in the trial court as a basis for defeating Goodman's affirmative defense of reasonable reliance. Nonetheless, the TEC argues on appeal that Advisory Opinion 319 is limited in application to situations involving *Travis County* rental properties owned as separate property by a legislator's spouse and is not applicable to Williamson County rental properties owned as separate property by a legislator's spouse. The TEC argues that the situation in Advisory Opinion 319 "implicated the 'safe harbor' provision of Texas Election Code Section 253.035(d)(1), while Goodman's payments on the Williamson County property would not." An examination of the "safe harbor"

21

provision of the election code section at issue conclusively establishes that it is not limited to residences in Travis County.

The "safe harbor" provision referenced by the TEC provides, in pertinent part:

> In this section, "personal use" means a use that primarily furthers individual or family purposes not connected with the performance of duties or activities as a candidate for or holder of a public office. The term does not include:
>
> > (1) payments made to defray ordinary and necessary expenses incurred in connection with activities as a candidate or in connection with the performance of duties or activities as a public officeholder, *including* payment of rent, utility, and other reasonable housing or household expenses incurred in maintaining a residence in Travis County by members of the legislature who do not ordinarily reside in Travis County.

Tex. Elec. Code Ann. § 253.035(d) (emphasis added). Applying the Code Construction Act to this statute, it is fundamental that the word emphasized above, "including," is a "term[] of enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann. § 311.005(13) (Vernon 2005); *see also Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex.) (applying Code Construction Act to provisions of election code), *cert. denied*, 530 U.S. 1244 (2000). Thus, we cannot presume—and in fact we are

22

expressly prohibited by statute from presuming—that by specifically listing payment of rent, utility, and other reasonable housing expenses incurred in maintaining a residence in Travis County, the legislature intended to exclude payment of such expenses incurred in maintaining a residence in adjoining Williamson County. *See id.* Accordingly, as a matter of law, the distinction that the TEC attempts to draw between Travis County rental property owned as separate property by a legislator's spouse in Advisory Opinion 319 and the Williamson County rental properties owned as separate property by Goodman's wife is nonexistent.

Because the summary judgment evidence in the record before us conclusively establishes each element of Goodman's affirmative defense of reasonable reliance on Advisory Opinion 319, we overrule the TEC's sole issue on appeal.

## VI. CONCLUSION

Having overruled the TEC's sole issue on appeal, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

SUE WALKER
JUSTICE

PANEL: LIVINGSTON and WALKER, JJ.

DELIVERED: January 28, 2010

23